164 So. 822

**WALSH v. WALSH et al.**

2 Div. 65.

Supreme Court of Alabama.

Dec. 19, 1935.

306

E. F. Hildreth, of Eutaw, for appellant.

Mallory & Mallory and Craig & Brown, all of Selma, and Joseph H. James and S. W. H. Williams, both of Greensboro, for appellees.

FOSTER, Justice.

This is an appeal, with cross-assignments of error, from a decree of the circuit court in equity on the final settlement of appellant as administrator. On March 27, 1923, letters were issued. On January 10, 1928, a partial settlement was made in the probate court having jurisdiction. It was then found and decreed that he had received in cash $276,629.30 for said estate, and that he had paid costs and expenses and debts, and made distribution to the heirs in various amounts, leaving in his hands $6,832.-80. His account shows that he deducted commission of 5 per cent., $13,831.46, and was allowed said amount on that settlement.

On the final settlement the court charged the administrator with interest on the amount of the commission from the day the administrator actually paid himself in anticipation of settlement to the date of such settlement, in the amount of $4,090.-44. No complaint is made of this by either party. But the court also charged the administrator with interest on that sum ($4,090.44) from the date of the partial settlement to the final settlement, $1,942.-30. Both parties complain of this.

Appellant contends that no interest is chargeable after the date of the annual settlement, and appellees contend that, instead of doing as the court decreed, the interest should have been calculated from the date when the administrator improperly paid himself to the date of the final settlement, disregarding the annual settlement as a factor in that calculation.

There are not many cases in Alabama material to that question. In the case of Kenan v. Graham, 135 Ala. 585, 33 So. 699, the court held that an executor is not entitled to anticipate his fees and use the money. If he does so, he is chargeable with interest from the time the money was thus appropriated to the date of settlement. The court was dealing with a final settlement when there had been no annual settlement as required by section 5899, Code,

and cited the case of Noble v. Jackson, 124 Ala. 311, 312, 320, 26 So. 955, 958. Referring to that authority, we find a case where the heirs and executors agreed for the payment to be anticipated. The court held that no interest was chargeable under such an agreement, but observed that it was doubtless true that, in the absence of such an agreement, "the commissions were not payable until ascertained by the court." It is not suggested whether such ascertainment must be had at the time of the final settlement.

■ Section 5923, Code, allows the probate court to fix the commissions not exceeding 2½ per centum on receipts, and a like sum on disbursements. It is not stipulated that such allowance shall be made only on final settlement, nor when it may be done. It is not payable until it is allowed. But why is it not payable when it is allowed by authority of law? Under section 5899, Code, the duty to make annual settlements is required. True, the items on the account and the allowances so approved are not made conclusive by such settlement, but they are prima facie so, and the burden is on one who objects to an item so allowed of showing that it is an improper item either as a fact or in law when it is considered on final settlement. Dickie v. Dickie, 80 Ala. 57; Tayloe v. Bush, 75 Ala. 432; Holman v. Sims, 39 Ala. 709; Jones' Heirs v. Jones' Adm'r, 42 Ala. 218; section 5918, Code; Black v. Morgan, 227 Ala. 327, 149 So. 845.

■ Such rulings on partial settlement are subject to review on appeal from final settlement, though they will not support review in any other manner. Section 6115, subd. 5; Black v. Morgan, supra; Cunningham v. Cunningham, 215 Ala. 484, 111 So. 208.

■ Although the theory on which an administrator is chargeable with interest on commissions which he pays to himself is that it is not so payable until it is allowed, such allowance which has the prima facie effect of correctness is an allowance to the extent that the administrator does not commit a devastavit by acting on it unless it is set aside on final settlement or on appeal from final settlement. But if its allowance is not set aside, its effect as such is effective from the date of the decree of the court on annual settlement to that effect. If it is set aside, it is not a justification for the payment. It was not contended on final settlement nor on this appeal that a charge of interest to the date of the annual settlement was not proper.

■ The theory of the trial court was that on the annual settlement the administrator should have been charged with interest, which was calculated to be $4,090.44, but was not so charged, and therefore he was due that amount at that time. There was no personal judgment for it which bore interest as provided in section 8564, Code.

But it is now held that he personally owed the estate of which he was administrator, and therefore to himself as administrator, a certain amount. That amount must therefore be treated as paid on the date of the annual settlement (Lindsey v. Lindsey, 229 Ala. 578, 158 So. 522; Miller v. Irby's Adm'r, 63 Ala. 477; Cook v. Cook, 69 Ala. 294); so that it then became a fund of the estate which he was personally using, since he did not pay it in fact into the trust fund. He was therefore accountable for interest on it (section 5908, Code), but he was not liable for interest on commissions paid him after the date of their allowance.

■■ Direct assignments 4 and 5. The account of the administrator passed and allowed on annual settlement January 10, 1928, shows that Evins and Jack, attorneys, had a claim of $3,600 for services rendered decedent before he died, and that Judge Edward deGraffenried had a similar account. On final settlement it appears that R. B. Evins, a member of that firm, was indebted to the estate in the sum of $3,195, and that Judge deGraffenried's estate (he having died before appellant's intestate) owed said intestate $2,232, and his claim was agreed to be for a like amount. By agreement of all parties, respectively, the accounts were set off, so far as available. Thereby the administrator charged himself with the collection of said amounts and was credited with them as disbursements. But the court held that the commission provided by section 5923, Code, did not apply, since the administrator did not in fact handle the money.

That section has been held to refer to cash transactions only. Wright's Adm'rs v. Wilkerson, 41 Ala. 267. That does not mean that cash money must be handled; but the transaction must be one which is so regarded and properly so interpreted.

The subject has been treated in various aspects by law-writers. The opinion seems to prevail under somewhat analogous circumstances, that if decedent's property is subject to a lien, and the lienor enforces his right by a sale and satisfies his debt, it is not a receipt and disbursement by the administrator, but that it is so, if the administrator sells the property and pays the debt, even though a creditor buys and thereby discharges his debt without paying out any money. Note 46 A.L.R. 239; Baucus v. Stover, 24 Hun (N.Y.) 109; Wolf's Estate v. Wolf, 36 Tex.Civ.App. 168, 81 S.W. 90; Huddleston v. Kempner, 87 Tex. 372, 28 S.W. 936.

To compute the commission on mere bookkeeping entries of sums that had been only theoretically handled was held. to be an improper allowance. Hitchcock v. Mosher, 106 Mo. 578, 17 S.W. 638; Farmers' L. & T. Co. v. Turner, 242 N.Y. 240, 151 N.E. 439. But while "a mere bookkeeping charge could not create an actual receipt where there never had been one in fact, so an actual receipt, or one that was actual 'in contemplation of law,' was none the less actual because the executor in disposing of it adopted some short cut in exchange or in bookkeeping." Oberg's Estate, 148 Misc. 400, 266 N.Y.S. 641, 647; Wolf's Estate v. Wolf, 36 Tex.Civ.App. 168, 81 S.W. 90; Huddleston v. Kempner, 87 Tex. 372, 28 S.W. 936.

Whether the transaction should be treated as cash ought not to depend wholly upon whether cash is in fact passed into and out of the hands of the administrator. If so, the parties could easily let it assume that course when it would be unnecessary, and nothing more than a subterfuge. Its qualities depend upon the substantive nature of the transaction, and not its form. If, when so considered, a claim was collected and a debt paid, rather than a mere application of payments, it would be a cash transaction. Not so if there was a mere adjustment of payments thereby ascertaining the amount of an account with no mutuality of claims. When there is a demand against an estate, it is not in the nature of a payment. The administrator has no legal authority to allow it as such and pay it, or consent to a credit unless it can be collected out of the estate. If it is barred by nonclaim, it cannot be set off even with the consent of the administrator. Patrick v. Petty, 83 Ala. 420, 3 So.

779; Bell's Adm'r v. Andrews, 34 Ala. 538; Walker v. Tyson, 52 Ala. 593, 596.

Each cause of action exists as though the other did not, subject to section 10177, Code. The administrator is prohibited from paying a claim barred under either sections 5815 or 5824.

In no sense, therefore, can it be said that counterclaims are not separate and distinct. The law does not' create a lien under ordinary circumstances, nor is there one here made by contract as in King v. Porter, 230 Ala. 112, 160 So. 101, and Norris v. Commercial Nat. Bank, ante; p. 204, 163 So. 798. It is optional whether a counterclaim shall be set up in defense, or an independent suit begun; so that when the parties agree that counterclaims shall be set off, there is in contemplation of law a receipt and disbursement of that amount. An actual passage of that much money would be a subterfuge.

■ The commission provided by the statute is not alone for the responsibility of handling money; but that is the method provided by law for arriving at the amount of compensation for transacting all the business and performing all the ordinary duties of administration and making settlement. It is not a question of whether the receipt and payment of one item required more or less trouble and responsibility. Many acts of the administrator are not limited to collecting and paying money, but they should be and are considered in arriving at a just amount of compensation, not exceeding the limits fixed by law. In settling and adjusting counterclaims, the administrator is charged with the duty of adjusting the amount of both claims, and is accountable on final settlement with the responsibility to see that they are correct as settled. If there is doubt about it, that doubt should be settled by a suit. All of this should be considered along with his other duties in fixing his compensation within the limits of the statute.

■ The register found, and the court held, that the maximum should not be computed on the amount of the accounts set off by agreement, but evidently intended to allow the full amount of the maximum for the ordinary services of administration, on the theory that such amount was sufficient, considering any claim for extraordinary services to be thereby satisfied. The amount of the allowance within the maxi-

mum is largely in the discretion of the trial court. Collins v. Clements, 199 Ala. 618, 75 So. 165; Noble v. Jackson, 124 Ala. 311, 26 So. 955; Kenan v. Graham, 135 Ala. 585, 33 So. 699.

The first cross-assignment of error challenges the allowance of the maximum, and appellant's fifth direct assignment seeks to recover an amount for extraordinary services; whereas the third, fourth, and fifth cross-assignments challenge the right to allow a commission computed on the purchase price of the land, on the theory that section 5924, Code, is a limitation on section 5923 in respect to the proceeds of such sales, so that we think it advisable to consider those assignments and cross-assignments together.

■ It is first important, therefore, to determine the maximum amount of compensation for ordinary services when both sections are construed together. We see no escape from the proposition that section 5924 is a limitation on section 5923; so that in computing the maximum allowance under the latter section there must be deducted the amount of the proceeds of the sale of land for division, and the commission is computed on the balance with the addition of a maximum of $100 as compensation for services in connection with that transaction. See Bynum v. Brewer, 217 Ala. 52, 114 So. 577; section 9327, Code.

■ The trial court allowed an amount of compensation which was apparently intended as the maximum, but, in our judgment, misconceived the statutory limits as here applicable. We think that if the claims of Mr. Evins and Judge deGraffenried were subsisting, not barred by limitations or nonclaim, the amounts of them should be treated as receipts and disbursements. We think that the commission provided in section 5923 should not include the proceeds of the sale of land for division, but that section 5924 applies to such fund, and since 2½ per centum of it exceeds $100, the latter figure should be treated as the maximum. Whether the amount of the maximum allowance, when so considered, is just compensation for the ordinary, and the claim for extraordinary, services, or whether it should be more or less, is primarily in the discretion of the trial court. The trial court evidently intended to allow the maximum amount fixed by law for ordinary services as full compensation, and to include in such allowance the claim for extraordinary services. We do not disagree with that theory. We think with the court that the maximum allowance for ordinary services should be made, and that it is sufficient to compensate for the claim for extraordinary services. Craig v. McGehee, 16 Ala. 41; Reese v. Gresham, 29 Ala. 91; May v. Green, 75 Ala. 162; Rice v. First National Bank, 212 Ala. 352, 102 So. 700.

The ninth cross-assignment challenges the allowance of the deGraffenried counterclaim as a disbursement. Counsel in brief have abandoned that assignment, and ask that it be disregarded. We must assume that such action is upon the theory that the claim was duly presented, though there is evidence that it was not. With that condition of the claim, it follows that the administrator did no wrong in agreeing to it as a set-off. The transaction was as though cash had passed, and the commissions should be computed on that basis.

■ Cross-assignment No. 2. This relates to the amount of the allowance of the attorney's fee. The register reported that a reasonable attorney's fee was 5 per centum of the total amount of the receipts which were also disbursed. That amount was allowed on partial settlement, and the register on final settlement heard much evidence as to what was a reasonable amount to be allowed, and found that the allowance on partial settlement was substantially the sum which the evidence showed was reasonable. The court confirmed that holding, and it is amply supported by the evidence. Section 6261, Code, applies to attorney's fees in such matters. It provides no maximum, but the amount must be reasonable. There is no reason why it may not be paid by the administrator before settlement and allowance, since the administrator takes the responsibility of its allowance. Taylor v. Crook, 136 Ala. 354, 34 So. 905, 96 Am. St.Rep. 26. The expenses of administration may be paid as the services are rendered, otherwise the administrator may not be able to procure efficiency in their rendition, and since no statute or rule of law is to the contrary. The attorney does not have a claim against the estate, but the administrator must pay him, and ask credit and allowance for the amount paid. Taylor v. Crook, supra; Bates v. Vary, 40 Ala. 421. That theory contemplates a payment to the attorneys out of trust . funds

before the court makes an allowance. If the amount is approved, it is credited to the administrator on settlement. Interest on it would not be chargeable to the administrator unless it was improperly paid and disallowed. It results that interest is not chargeable on sums paid to attorneys when the court approves the payment. The distinction between that and commissions to the administrator is that as to the latter he should not pay and ask for credit, but ask for authority to pay. No payment of commission is proper until that authority is given. We think therefore that there was no reversible error in the allowance of the attorneys' fee or in not charging the administrator with interest on the amounts held proper to have been paid.

Direct assignment No. 6. This is based upon the refusal of the court to allow the administrator credit for $2,212.94, which was on deposit in the First National Bank of Greensboro, to the credit of appellant as administrator, when it failed and the amount lost. The register found that by due diligence and ordinary prudence the administrator should have withdrawn from the bank this amount and saved it to the estate. The trial court did not include the amount as a credit, but with no special comment overruled exceptions to the register's report.

The evidence is that for several months before the bank closed reports were circulated that it was not in good condition, and for about 30 days before it closed that it was not paying checks in full, and that the administrator did not seek to withdraw the deposit in whole or in part, while others were doing so, upon the idea that such an effort would cause the immediate suspension of the bank and total loss. But the effort to get some or all was not made, when we think it should have been done. With such a condition generally known, he should not have been idle, hoping for good results without effort. The law is more exacting of an administrator or other trustee. It is not like the case of Jolly v. Richardson, 230 Ala. 548, 161 So. 814. The rule requires that the administrator shall exercise due diligence and prudence and act in good faith. The bank must bear a good reputation to justify him (administrator) in leaving trust funds in it. Gibbons v. Norton, 225 Ala. 650, 145 So. 131; Barnes

v. Clark, 227 Ala. 651, 151 So. 586, 90 A.L.R. 637.

Second direct assignment of error. The court charged the administrator with $1,602.37 balance of debt due the estate by note from E. A. Powers Sons. The register found that the note came to the hands of the administrator upon his qualification in 1923; that collection was not made nor suit filed until June 15, 1928, and it was afterwards abated by the bankruptcy of the debtors; that during that time the money could and should have been collected by due diligence on the part of the administrator. The evidence amply sustains this finding, which was approved by the trial judge. For such failure to use due diligence, the administrator is chargeable with the loss. Wilkinson v. Hunter, 37 Ala. 268; Feagan v. Kendall, 43 Ala. 628; Smyley v. Reese, 53 Ala. 89, 25 Am.Rep. 598; Munden v. Bailey, 70 Ala. 63; Dickie v. Dickie, 80 Ala. 57.

The judgment of the circuit court is reversed, and the cause remanded that the court may restate the account in accordance with our understanding of the applicable principles. The cost of appeal is taxed one-half to appellant and one-half to appellees.

Reversed and remanded.

GARDNER, THOMAS, and BROWN, JJ., concur.